**Joseph K. TURNES, Plaintiff–Appellant,**

v.

**AmSOUTH BANK, NA, Defendant– Appellee.**

No. 93–7027.

United States Court of Appeals, Eleventh Circuit.

Oct. 27, 1994.

Susan Reeves, Birmingham, AL, for appellant.

Lisa Narrell–Mead, Carol Sue Nelson, Constangy, Brooks & Smith, Birmingham, AL, for appellee.

Before CARNES and BARKETT, Circuit Judges, and JOHNSON, Senior Circuit Judge.

JOHNSON, Senior Circuit Judge:

In this appeal from the Northern District of Alabama, Joseph K. Turnes contests a grant of summary judgment in favor of AmSouth Bank, N.A. ("AmSouth") on Turnes' claim of racially discriminatory non-hiring. We reverse and remand.

## I. STATEMENT OF THE CASE

### A. *Factual Background*

In the late summer of 1991, Turnes, a black male, sought a position as a loan collector at AmSouth. After an initial interview with AmSouth employee Catherine Alexander, Turnes' application was rejected. At her deposition, Alexander testified that she recalled neither the interview nor her reason for not recommending Turnes for consideration by her superior, Gene Griffin.[1] Alexander further averred that among the primary criteria she used to select candidates to advance to the next stage of interviewing were collection experience and computer skills. Both Alexander and Griffin testified that they did not consider applicants' race in deciding whom to hire.

Alexander and Griffin are white, as are all of the individuals offered positions as loan collectors at or about the time Turnes applied. Turnes claims that he is more qualified for the position of loan collector than any of those hired.[2]

AmSouth offered evidence that its policy is to conduct a routine credit check through a local credit reporting agency on applicants for employment. Lynn Crouch, Assistant Vice President of Employee Relations at AmSouth, testified that AmSouth also generally performs an internal check of an applicant's credit history with AmSouth. AmSouth's "Personal Finances and Indebtedness" policy states that "[i]rresponsible financial practices ... on the part of any employee will not be tolerated...." In short, AmSouth maintains that it requires its employees to have "clear credit."

No credit check was performed on Turnes until AmSouth received notice that he had filed a charge against it with the Equal Employment Opportunity Commission. The internal check then conducted showed that Turnes had a poor history of paying on an AmSouth loan and of being overdrawn on his AmSouth checking account.[3] Crouch testified that had Turnes made it past the initial interview stage, his credit history would have eventually precluded him from being consid-

---

1. Any notes Alexander may have taken at Turnes' initial interview were shredded after the position was filled.

2. Turnes had seven years' collection experience, significantly more than any other applicant. Two of those years were spent doing collection work at a bank and using the same computer software as AmSouth. Turnes offered evidence that one of the white hirees had no collection experience and no computer skills and that none of the white hirees had ever worked for a bank before taking their positions at AmSouth.

3. As of January 23, 1992, Turnes (1) had been overdrawn on his checking account 82 days during the previous 12 months; (2) had written insufficient fund checks 48 times during the previous 12 months; and (3) was overdrawn at the time by an amount of $36.07. Also Turnes had been delinquent in making his payments on his loan at AmSouth on at least 21 separate occasions.

ered for employment as an AmSouth loan collector.

However, Turnes offered evidence that during the same time period as his application was rejected, one white applicant was offered a position as a loan collector though no check of his credit had been performed, and another white applicant who was hired had had an account closed by a creditor because it was deemed uncollectible. He also offered evidence tending to show that his own credit was not objectionable to AmSouth.[4]

### B. *Procedural History*

In November 1992, Turnes filed suit, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e *et seq.* (West 1981)[5] and 42 U.S.C.A. § 1981 (West 1981).[6] In November 1993, the court granted AmSouth's motion for summary judgment. This timely appeal followed.

## II. DISCUSSION

### A. *Standard of Review*

We review *de novo* a district court's grant of a motion for summary judgment. *Cummings v. De Kalb County,* 24 F.3d 1349, 1354 (11th Cir.1994). Summary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* We view all evidence and reasonable factual inferences drawn therefrom in the light most favorable to the party opposed to the motion.

*Warren v. Crawford,* 927 F.2d 559, 561–62 (11th Cir.1991).

### B. *Framework of Analysis*

The Supreme Court's disparate treatment cases, such as *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), provide the appropriate starting point for evaluating a plaintiff's Title VII claim for discriminatory non-hiring. *Burns v. Gadsden State Community College,* 908 F.2d 1512, 1517–18 (11th Cir.1990). The *McDonnell Douglas* scheme for the allocation of burdens and the order of presentation of proof also applies in § 1981 cases involving discriminatory treatment in employment situations. *Howard v. BP Oil Co., Inc.,* 32 F.3d 520 (11th Cir.1994).

Under *McDonnell Douglas,* the initial burden rests on the plaintiff to establish, by a preponderance of the evidence, a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94.[7] Once the plaintiff has set out a prima facie case, a presumption of discrimination arises. *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The intermediate burden of production then shifts to the employer to articulate a legitimate, non-discriminatory explanation for not hiring him. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct.

---

4. Alexander testified at her deposition that AmSouth "covers" an overdraft (i.e., does not allow a check to bounce) when the maker of the check is "a good customer," one with "an established credit rating with the bank." Turnes produced evidence that AmSouth frequently covered overdrafts for him.

5. 42 U.S.C.A. § 2000e–2(a)(1) (West 1981) provides: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."

6. 42 U.S.C.A. § 1981 (West 1981) provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to

sue, be parties, give evidence and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

7. To make out a prima facie case, a plaintiff must demonstrate by a preponderance of the evidence that (1) he belongs to a racial minority; (2) he was qualified for the position for which the defendant was taking applications; (3) despite his qualifications, he was rejected; and (4) after his rejection, the defendant continued to seek applications from persons of his qualifications. *Jones v. Firestone Tire and Rubber Co., Inc.,* 977 F.2d 527, 536 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2932, 124 L.Ed.2d 682 (1993).

at 1824. This intermediate burden is "'exceedingly light.'" *Meeks v. Computer Associates. Int'l,* 15 F.3d 1013, 1019 (11th Cir.1994) (quoting *Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 (11th Cir.1983)). The employer need only offer admissible evidence sufficient to raise a genuine issue of fact as to whether it had a legitimate reason for not hiring the plaintiff. *Hill v. Seaboard Coast Line R. Co.,* 767 F.2d 771, 774 (11th Cir. 1985).

■ If an employer succeeds in carrying its intermediate burden of production, the *McDonnell Douglas* framework, with its presumptions and burdens, drops out of the case, and the trier of fact proceeds to decide the ultimate issue in the case: whether plaintiff has proven that the employer intentionally discriminated against him because of his race. *St Mary's,* —— U.S. at ——, 113 S.Ct. at 2749.

■ On the other hand, where a plaintiff's prima facie case is established, but the employer *fails* to meet its burden of production, the unrebutted presumption of discrimination stands. *Joshi v. Florida State Univ. Health Ctr.,* 763 F.2d 1227, 1236 (11th Cir.), *cert. denied,* 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 293 (1985). Therefore, judgment for the plaintiff is appropriate, *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2748, unless the employer proves by a preponderance of the evidence that absent the discrimination, the plaintiff would not have been hired anyway. *Joshi,* 763 F.2d at 1235–36; *Lewis v. Smith,* 731 F.2d 1535, 1538 (11th Cir.1984) ("Once discrimination has been established ... a presumption of entitlement to appropriate remedies ... arises.... The burden then shifts to the employer to rebut by showing [by a preponderance of the evidence] that the discriminatee would not have been hired absent the discrimination.").

## C. *Application*

■ The court below assumed without deciding that Turnes made a prima facie case, and we make the same assumption on appeal. Although it is undisputed that AmSouth had no knowledge of Turnes' credit history when his application was rejected, AmSouth attempted to meet its intermediate burden by positing Turnes' credit history as its legitimate, non-discriminatory reason for not hiring him. The district court accepted AmSouth's justification as adequate to meet the intermediate burden, relying on the following language from *Burdine:* "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

■ The district court erred in reading the above-quoted language from *Burdine* as allowing an employer to meet the intermediate burden with a hypothetical justification for its decision. Taken in context, the quoted sentence merely explains that the employer's intermediate burden is one of production, not persuasion.[8] In other words, although it is true that the employer need not *prove* it was actually motivated by the proffered reason, *Burdine* clearly does not relieve the employer from *producing* a reason that was available to it at the time of the decision's making. Moreover, this Court has squarely held that an employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made. *EEOC v. Alton Packaging Corp.,* 901 F.2d 920, 925 (11th Cir.1990); *Joshi,* 763 F.2d at 1235; *see also Burdine,* 450 U.S. at 257, 101 S.Ct. at 1095–96 (to satisfy its intermediate burden, an employer must "... produce admissible evidence which would allow the trier of fact to conclude that the employment decision *had not been* moti-

8. As support for the quoted language, the Supreme Court in *Burdine* cited *Bd. of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 295–96, 58 L.Ed.2d 216 (1978) which reads in relevant part:

> While words such as "articulate," "show," and "prove," may have more or less similar meanings depending upon the context in which they

are used, we think that there is a significant distinction between merely "articulat[ing] some legitimate, nondiscriminatory reason" and "prov[ing] absence of discriminatory motive." By reaffirming and emphasizing the *McDonnell Douglas* analysis in *Furnco Construction Co. [Corp.] v. Waters, supra* [438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)], we made it clear that the former will suffice to

vated by discriminatory animus.") (emphasis added).[9]

AmSouth's proffered reason is insufficient to meet its burden of production. AmSouth came forward with no explanation of why it rejected Turnes based on what it knew when it rejected him. Therefore, Turnes' "prima facie case stands unrebutted, and discrimination is established." *Joshi*, 763 F.2d at 1236.

Turnes is not entitled to relief, however, if AmSouth's discriminatory failure to process his application caused him no injury. *See East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403–04, 97 S.Ct. 1891, 1896–97, 52 L.Ed.2d 453 (1977) (plaintiffs who lacked the qualifications for hiring "could have suffered no injury as a result of the alleged discriminatory practices."). If AmSouth can show that Turnes would not have been hired even absent the discrimination, Turnes' claim will fail. *Id.* at 403–04 n. 9, 97 S.Ct. at 1897 n. 9 (employer is entitled to prove as a defense at trial that plaintiff was not qualified and therefore would not have been hired in any event).[10] This defense must be proven by a preponderance of the evidence. *Joshi*, 763 F.2d at

1236; *Lewis*, 731 F.2d at 1538. Therefore, despite the district court's erroneous conclusion that AmSouth had met the intermediate burden of production, summary judgment for AmSouth would have been proper if, in the face of AmSouth's defense that Turnes would not have been hired even absent the discrimination, Turnes raised no genuine issue of fact as to that question.[11]

However, Turnes *has* created a genuine issue of fact on three aspects of this causation/injury question.[12] First, Turnes presented evidence that "clear credit" may not have actually been a requirement for employment at AmSouth. Second, he presented evidence that AmSouth does not strictly adhere to its purported credit standards. Third, he presented evidence that by AmSouth's standards, his credit may not have been unacceptable.

Thus, assuming that Turnes establishes a prima facie case of discrimination, it remains for the factfinder to determine whether, absent any illegitimate motive, AmSouth would have discovered Turnes' credit history and if so, whether it would have rejected him on that basis. Accordingly, in granting summary judgment for AmSouth, the district court erred.

---

meet the employee's prima facie case of discrimination.

9. AmSouth contends that had Turnes progressed in the hiring process, it *would have discovered* Turnes' credit history and *would not have hired him* on that ground. Thus, this case is not an "after-acquired evidence" case in the mold of *Wallace v. Dunn Constr. Co.*, 968 F.2d 1174 (11th Cir.1992), vacated for rehearing en banc, 32 F.3d 1489 (11th Cir.1994) and *Summers v. State Farm Mutual Automobile Ins. Co.*, 864 F.2d 700 (10th Cir.1988). In *Wallace* and *Summers*, the thrust of the employers' contentions was that even if the employer never would have discovered the information outside of litigation, the information nonetheless justified the employment decision made. As AmSouth makes no such contention, we need not here revisit that unsettled area of the law. *See McKennon v. Nashville Banner Publishing Co.*, 9 F.3d 539 (6th Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 2099, 128 L.Ed.2d 661 (1994).

10. *See also Smallwood v. United Air Lines, Inc.*, 728 F.2d 614 (4th Cir.1984) (after violation of Title VII was established, employer was allowed to defend by showing that it would not have hired the plaintiff anyway); *Murnane v. American Airlines, Inc.*, 667 F.2d 98, 101–02 (D.C.Cir.1981)

(acknowledging the availability of such a defense).

11. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 2556–57, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting) ("[i]f the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party to ... demonstrate the existence of a 'genuine issue' for trial."); *Fireman's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir.1993) (same); *Anderson v. Dep't of Health and Human Servs.*, 907 F.2d 936, 947 (10th Cir. 1990) (same); *Beaver Valley Power Co. v. Nat'l Engineering Contracting Co.*, 883 F.2d 1210, 1217 n. 7 (3rd Cir.1989) (same).

12. *Cf. Smallwood*, 728 F.2d at 627 (holding that absent the discrimination, "the defendant would unquestionably not have found the plaintiff qualified for employment"); *Murnane*, 667 F.2d at 102 (noting district court's post-trial finding that "it is clear from credible and persuasive evidence that plaintiff would not have been selected during ·the later stages of the pilot selection process.").

### III. CONCLUSION

The court's grant of summary judgment for AmSouth is REVERSED, and the case is REMANDED.