**Ruby Nell MYRICK, Plaintiff,**

v.

**Marvin T. RUNYON, Postmaster General, Defendant.**

Civ. A. No. 94–D–411–N.

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 14, 1995.

Gary E. Atchison, Montgomery, AL, for plaintiff.

James V. Coggin, Jr., U.S. Postal Service, Memphis, TN, Patricia A. Snyder, David L. Allred Ann Ashton Holmes, Leura J. Garrett, U.S. Attorney's Office, Montgomery, AL, for defendant.

### MEMORANDUM OPINION

DE MENT, District Judge.

This action was presented for trial in the United States District Court for the Middle District of Alabama on July 10, 1995. Ruby Nell Myrick ("Ms. Myrick" or the "Plaintiff") claimed that the United States Postal Service (the "Defendant" or the "United States") discriminated against her by failing to promote her to one or more Postmaster positions. Plaintiff claims that the alleged adverse employment decision is in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 *et seq.* At the close of the Plaintiff's evidence, the Defendant moved for judgment as a matter of law, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The court denied Defendant's motion. Subsequently, the Defendant moved for judgment as a matter of law after presenting its evidence.

### JURISDICTION & VENUE

Jurisdiction is proper under 28 U.S.C. § 1331, as Plaintiff alleges a violation of the ADEA. Jurisdiction of the person of the Defendant and venue are not contested.

### FACTUAL BACKGROUND

Plaintiff is a 56 year old female who has been employed by the United States Postal Service since October 8, 1977. Plaintiff has applied for more than one appointment to Postmaster but, to date, has not been selected.

Plaintiff applied for the Postmaster position at Marbury, Alabama in 1991. The position was ultimately filled by Pam Rich (hereafter "Ms. Rich"), a female who, at the time of the appointment, had not reached age 40. Two other persons applied for the Marbury Postmaster position and both were over the age of forty.

The parties stipulate that age of the applicants for the Marbury Postmaster appointment was not requested. The parties also stipulate that all four finalists for said position met the minimum qualifications.

Ms. Myrick contends that Defendant's adverse employment action was a product of age discrimination in violation of the ADEA. Plaintiff avers that she was denied the position despite being the most qualified applicant. Ms. Myrick claims that Defendant's conduct regarding the Marbury Postmaster position is part and parcel of its pattern and

practice of age discrimination. Plaintiff prays for: injunctive relief; appointment to Postmaster of Marbury, Alabama, or alternatively, to a postmaster's position of comparable pay, benefits, and location; and attorney's fees and costs.

### DISCUSSION & ANALYSIS

■ Plaintiffs alleging disparate treatment in violation of the Age Discrimination in Employment Act[1] must prove that an impermissible discriminatory motive precipitated the adverse employment action by presenting either direct or circumstantial evidence. *St. Mary's Honor Center v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2754, 125 L.Ed.2d 407 (1993). Here, Myrick has not presented any evidence of direct evidence of discrimination.

■ The Eleventh Circuit has adopted the principles governing the order and allocation of proof in actions arising under Title VII to claims of age discrimination. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993). Therefore the court must follow the analytical framework established by the United States Supreme Court in the landmark cases of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see Walker v. NationsBank of Florida,* 53 F.3d 1548, 1556 (11th Cir.1995). Under the *McDonnell Douglas/Burdine* framework, the plaintiff-employee bears the initial burden of establishing a prima facie case of age discrimination. *See Walker,* 53 F.3d at 1556 (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824); *see also Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989).

■ Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. This burden is extremely light because the defendant need only articulate, not prove, a nondiscriminatory reason. *Walker,* 53 F.3d at 1556 (citing *Perryman v. Johnson Products Co., Inc.,* 698 F.2d 1138, 1142 (11th Cir.1983)); *see also Meeks v. Computer Associates International,* 15 F.3d 1013, 1019 (11th Cir.1994). Once the defendant-employer articulates a legitimate nondiscriminatory reason for its questioned action(s), the presumption of discrimination drops from the case, and the plaintiff-employee must prove, by a preponderance of the evidence, that the defendant-employer's proffered nondiscriminatory reason is part of a pretextual scheme to conceal unlawful discrimination. *See Turnes v. AmSouth, N.A.,* 36 F.3d 1057, 1061 (11th Cir.1994) (citing *St. Mary's Honor Center,* — U.S. at —, 113 S.Ct. at 2749).

■ An ADEA plaintiff may establish a presumption of discrimination by satisfying the four-prong test set forth in *McDonnell Douglas.*[2] To satisfy this burden in a failure to promote case, the plaintiff must show that:

1) she belongs to a protected class (i.e., is over 40 years of age);

2) she applied for and was qualified for the promotion for which the employer was seeking applicants;

3) she was denied the promotion; and

4) another equally or less qualified individual younger than the plaintiff received the promotion.[3]

---

1. The ADEA provides, in part:
"[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age ..." 29 U.S.C. Section 623(a)(1). The ADEA applies to persons between the ages of 40 and 70. *See id.*

2. While *McDonnell Douglas* involved a claim of discrimination under 42 U.S.C. 2000e *et seq.,*

Title VII, its analysis applies to claims under the ADEA as well. *Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1500 (11th Cir.1991) (citing *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990)).

3. Under the ADEA, unlike Title VII race and sex cases, the plaintiff is not required to show that the employer filled the position with someone outside the protected age group. As explained in *Corbin v. Southland Int'l Trucks,* 25 F.3d 1545 (11th Cir.1994): "[t]he plaintiff in an age discrimination case may establish a prima case

Here, the court finds that Plaintiff constructed a prima facie case of age discrimination. First, her age exceeded 40 years on the date of the alleged adverse employment action. Second, the parties stipulated that all finalists for the Marbury postmaster position were qualified. Third, Ms. Myrick was not granted the Marbury Postmaster position. Finally, Ms. Rich had not attained her fortieth birthday on the date she was promoted to the Marbury Postmaster position.

■ The Defendant states that its reason for not promoting Ms. Myrick has nothing to do with age, but, rather, was due to the ultimate promotee's superior qualifications.[4] Thus, the court finds that the Defendant carried its burden of production by articulating an age neutral explanation for not selecting Plaintiff to fill the subject Postmaster position. Now the court must determine whether the Plaintiff has carried her burden of proving by a preponderance of the evidence that the adverse employment action was prompted by invidious discrimination.

■ Plaintiff claims that she was more qualified than Ms. Rich. Ms. Myrick also contends that she had more supervisory experience as is evidenced by her years of service as a post office assistant. However, the persons responsible for filling the Marbury Postmaster position—Carl Johnson (hereafter "Mr. Johnson") and James F. Salter (hereafter "Mr. Salter")—testified at trial that they did not consider the post office assistant post a duly recognized position of authority.

Both Messrs. Johnson and Salter asserted that in determining who received the subject postmaster position they considered 1) the length of time served as an officer in charge of a post office and the size of the subject post office;[5] 2) the interview impressions; and 3) community involvement.[6] Mr. Johnson stated, and Plaintiff did not rebut, that the Plaintiff served as officer in charge of the Coosada post office from April 1985 to July 1985. The Coosada branch is designated a Level 11 Post Office. On the other hand, Ms. Rich served as officer in charge in Hayneville from July 1990 to October 1990. Hayneville has a designation of Level 15.

At trial, Mr. Johnson noted that a level 15 post office is larger and has 1 to 5 rural (mail delivery) routes. On the other hand, Level 11 post offices are smaller and have a maximum of one rural route. The Marbury post office is designated level 13. The interviewers testified that they felt serving as officer in charge of a Level 15 post office provided a more worthy substantive experience for serving as postmaster for a Level 13 post office. Therefore, they concluded that Ms. Rich had the edge on this factor.

Mr. Salter, who was Ms. Rich's supervisor at the time of her appointment, drafted a letter addressed to Mr. Thompson which stated that Ms. Rich had an excellent interview, but offered no supporting facts. At trial, Mr. Salter asserted that during the interview, Ms. Rich articulated "special improvements" for the office. However, when asked what the suggested improvements were, Mr. Salter replied that he did not remember. Furthermore, Mr. Johnson claimed that Ms. Rich's knowledge of delivery and her proffered safety program were commendable. Messrs. Salter and Johnson thought that Ms. Rich explained the four

merely by establishing that h[er] replacement was younger than [s]he, provided that the discrepancy between the ages, along with any other relevant evidence, is sufficient that a fact finder could reasonably infer age discrimination." *Id.* at 1549.

4. The process for determining who is hired or promoted is as follows: 1) interested applicants complete a 991 Form (application); 2) the committee selects 3 to 5 finalists for interviews—all local applicants are interviewed, whether qualified or not; 3) Mr. Carl Johnson makes a recommendation, which is forwarded to the Regional

Postmaster General, who makes the determination. The court points out that this final stage is mere formality because the Regional Postmaster General routinely adopted Mr. Johnson's recommendation.

5. According to Mr. Johnson, officers in charge are acting postmasters.

6. Mr. Johnson testified that the interview was the most critical factor in the promotion determination. He stated that the interview comprised approximately 60% of the evaluation.

service initiatives superbly and without flaw.[7]

Mr. Johnson testified that Ms. Myrick had a fair interview. Johnson testified that although Plaintiff satisfactorily answered most of the questions asked during the interview, she experienced difficulty in explaining the four service initiatives. Mr. Johnson acknowledged that Ms. Myrick was knowledgeable of rural delivery. However, according to Mr. Johnson, Plaintiff's proposed safety program lacked substantive content. Mr. Johnson added that Plaintiff did not do a sufficient job of "selling herself" during the interview.

Mr. Salter testified that he felt Ms. Rich was better prepared for the interview. He testified that he was especially impressed by Ms. Rich's initiative exhibited by traveling to the Marbury community and post office to gain familiarity with the area.

The court finds that Plaintiff has failed to carry her burden. The court reiterates that in order for an ADEA plaintiff to prevail, she bears the ultimate burden of demonstrating that unlawful animus induced the adverse employment action. Mr. Salter may have unduly influenced Mr. Johnson's decision to hire Ms. Rich instead of Ms. Myrick. However, the court is of the opinion that personal endearment and not statutorily proscribed discrimination influenced Mr. Salter's decision to recommend Ms. Rich for the Marbury postmaster position. During the trial, it was obvious that Mr. Johnson adopted Mr. Salter's recommendation without engaging in an independent examination of Mr. Salter's determination.[8]

The parties agree that the subject postal employment application does not contain a slot for age. However, an applicant's age can be attained from the application because the high school graduation date of an applicant is displayed on his/her application. However, Plaintiff does little more to advance her position that the failure to promote was motivated by age discrimination. Plaintiff only argues that anyone could have logically and correctly concluded that Ms. Rich was considerably younger than she. Ms. Myrick simply does not convince the court that the failure to promote her was prompted by impermissible motivation. Even assuming that Messrs. Salter and Johnson knew that Ms. Myrick was considerably older than the promotee, without a showing of discriminatory intent, she cannot prevail under the ADEA.

During the trial, Plaintiff averred that she felt that the postal service in this area displays favoritism in its hiring and promotion practices. According to Plaintiff, the postal service is "clanny and cliquish." The Plaintiff claims that the fact that Ms. Rich was Mr. Salter's secretary was not an insubstantial factor in the determination to award Ms. Rich the Marbury Postmaster position.

■ The court is inclined to concur with Ms. Myrick's claim that the personal relationship of Mr. Salter and Ms. Rich weighed heavily in determining who was appointed to the Marbury Postmaster position. The record contains testimony that Mr. Salter commented to Ms. Rich about the interview. From this, the court infers that Mr. Salter offered Ms. Rich interview tips. However, although promotions prompted by emotional favoritism do not further fairness and subvert notions of impartial hiring and meritorious achievement, neither the ADEA nor the other civil rights statutes prohibit employment decisions motivated by such force.[9]

---

7.  The postal service's four service initiatives consist of: 1) GIST—greet, inquire, suggest and thank; 2) EXFC, which stands for external first class, is an outside investigation and determination regarding the lapse of time between mail arrival and departure in a particular post office; 3) customer satisfaction index, which is measured by an outside firm; and 4) answer customer complaints within a 24–hour period.

8.  Mr. Johnson was cloaked with the authority to all but determine who is hired and promoted at the Marbury Post Office. Routinely, Mr. Johnson received recommendations from Mr. Salter following interviews. Although the frequency of varying views on employment choices was not clearly set forth during the trial, these two gentlemen did not always agree and Mr. Johnson sometimes rejected Mr. Salter's recommendation.

9.  For better or worse this is the current state of the law. Congress has determined, and justifiably so, that an employer may not discriminate against an employee or prospective employee because of an immutable trait, such as age, that person possesses. However, the law offers no legal recourse for employment decisions fueled

The ADEA's express purpose is to eradicate employment decisions motivated by age-based animus. Therefore, so long as age does not enter the equation when making an employment decision, the ADEA cannot be violated.

## CONCLUSION

To prevail on an action arising under the ADEA, a plaintiff bears the ultimate burden of proving by a preponderance of the evidence that age discrimination was the propelling force of an employment decision. Because the Plaintiff has failed to prove that the action complained of was the product of statutorily prohibited discrimination, the court finds that judgment is due to be entered in favor of the Defendant.

by personal endearment or political alignment. The ostensible rationale is: while we may redefine our affiliations or alter our attitudes, we have no control of our age.