**Mickey BELL, Plaintiff,**

v.

**EUFAULA CITY BOARD OF EDUCATION, Defendant.**

**No. CIV. A. 97–D–1313–N.**

United States District Court, M.D. Alabama, Northern Division.

Feb. 23, 1998.

Kenneth C. Sheets, Jr., Dothan, AL, for Plaintiff.

Robert T. Meadows, III, Opelika, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant's Motion for Summary Judgment, filed December 17, 1997. Plaintiff filed a Response on February 11, 1998. After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that Defendant's Motion for Summary Judgment is due to be granted.

### JURISDICTION AND VENUE

Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings,

depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita,* 475 U.S. at 587; *see also Anderson,* 477 U.S. at 249.

## STATEMENT OF FACTS

Plaintiff Mickey Bell ("Bell"), a white male over 40 years of age, is a social studies teacher at Admiral Moorer Middle School, within the Eufaula City School System. Bell has been a teacher within the Eufaula City Schools for over 24 years. In June, 1996, Dr. Susan Lockwood, Superintendent of Defendant Eufaula City Board of Education, recommended that the Board of Education consider the transfer of Bell from an Eighth Grade social studies class to a Seventh Grade class. Bell was subsequently transferred. Neither Bell's salary, tenure, benefits nor status were affected by this transfer. (Tr. of Hr'g Before Eufaula City Board of Education, attached as Ex. A. to Aff. of Susan L. Lockwood, attached to Def.'s Mot. for Summ. J. ("Tr."), at 43.)

Defendant contends that the general reason for Bell's transfer was "to reorganize the middle school teams and thereby provide a stronger educational program for the students at the Admiral Moorer Middle School." (Aff. of Susan L. Lockwood, attached to Def.'s Mot. for Summ. J. ("Lockwood Aff."), at 2.) Vic Adkinson, the principal and structural leader at Admiral Moorer Middle School, testified to the Board of Education concerning the specific reasons for Bell's transfer. As Adkinson explained, in the middle school, students are taught by teams of teachers, called "pods." (Tr. at 30.) These are considered "schools within schools." (Tr. at 30.) As Adkinson explained, the purpose of the teaching "pods" is for

> teachers to get to know [the students] and know the characteristics of adolescents and really help them out not only academically but socially and emotionally.... The teachers home (sic) in instructionally on the needs but also their social and emotional needs about the changes that they go through.

(Tr. at 30.)

Prior to Bell's transfer, Adkinson stated that he had identified some deficiencies in the teaching pods.

> We have gotten imbalance on our teams. I am talking about veteran teachers. I am talking about non-tenured teachers. We are not balanced as far as our ratio on each team.... Other concerns have been a minority role model. We did not have a percentage of minority role models that we needed. We did not have the percentage of male role models that we needed. On these teams on the emotional and physical development of the students, you need males working with males at times and males supervising males just as you do females when you are dealing with adolescents because all the changes that they are going through.

(Tr. at 31–32.)

Adkinson testified that Bell's transfer from the Eighth to the Seventh grade was in the

best interest of the students. Specifically, Adkinson stated:

Social studies is an area ... that's one of our lowest achievement levels as measured by the Stanford Achievement Test. That is one reason we need to look at social studies. Mr. Bell has a strength. His strength is knowledge of subject matter. He has been here 24 years. He knows the curriculum. We are in the process of re-writing the curriculum .... With his knowledge and the writing in the middle and knowing, he is going to be able to help strengthen the knowledge and the writing of that curriculum to get aligned the students from the 6th, 7th and 8th grade. That is one reason. Another reason the team that he presently on had two males. In trying to balance the males we had to remove one male from that team. Why didn't we remove the other one? He is a minority. He is integrated science. Why not move an integrated science teacher? We spend 1 to $2,000.00 a year for them to receive training in their subject grade level. So economically it would not have been wise to move that person. Those are the reasons.

(Tr. 39–40.)

Additionally, Adkinson states that Bell was transferred in order to maintain a balance of tenured and non-tenured teachers, as well as veteran and non-veteran faculty.

When we have non-tenured folks on the same subject and same grade level we see a drop in performance just as in any other profession. We have veteran folks to balance and use in pacing the instruction and being able to look instead of day by day where they need to be at the end of the year. A veteran person really helps do that.... There are things that a veteran person can learn from a person that is just coming out with current research how to teach, techniques and strategies. There is a good mesh there when you do that. That was in mind, too. This is the ideal year for us to make changes with the alignment of curriculum.

(Tr. at 41.)

Bell states that he loved the subject he was teaching in the Eighth grade class, prior to being transferred to the Seventh grade social studies class. (Tr. at 65.) Thus, he preferred to stay in the Eighth grade team. (Tr. at 66.) Further, Bell opposed the transfer because he claims that he will be required to go through new books, create new lesson plans and engage in new preparation. (Tr. at 82.)

Bell contested the transfer before the Board of Education, which upheld the decision. Bell appealed the Board of Education's decision to the Tenure Commission and subsequently filed a Petition for Writ of Mandamus in the Circuit Court of Barbour County. Bell now files the instant action, claiming that the Eufaula Board of Education ("The Board") discriminated against him on the basis of race, age, and gender, in violation of 42 U.S.C. § 2000e et seq. ("Title VII"), as well as 42 U.S.C. § 1981 ("Section 1891"), by subjecting him to disparate treatment in the assignment of teaching positions. Bell claims that his old position on the Eighth grade team was filled by an Indian woman and then a 28 year old man. (Compl. at ¶ 9.) Bell also brings state law tort claims of outrage and intentional infliction of emotional distress. Defendant has moved for summary judgment on all of Bell's claims.

## DISCUSSION

### I. Plaintiff's Discrimination Claims

 Plaintiff brings a claim under Title VII and 42 U.S.C. § 1981 ("Section 1981"), alleging discrimination on the basis of race, gender and age. As a threshold matter, the court notes that Title VII forbids disparate treatment on the basis of sex, race, or national origin in a wide range of employment practices, including hiring, discharge, and promotion. *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir.1994) (citing *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518,

1526 (11th Cir.1992)).[1] Section 1981 prohibits race discrimination in the making and enforcing of contracts and is a statutory remedy available in both the public and private sectors.[2] *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The correct cause of action for discrimination on the basis of **age** is 29 U.S.C. § 621 et seq., the Age Discrimination in Employment Act ("ADEA").[3] However, nowhere in his pleadings does Plaintiff invoke this statute as a cause of action for his age discrimination claim. Nevertheless, the court construes Plaintiff's complaint to allege a violation of Title VII, Section 1981, and ADEA.

■ The allocation of burdens and elements of a prima facie case are the same for employment claims stemming from Title VII, ADEA and Section 1981. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Richardson v. Leeds Police Dept.*, 71 F.3d 801, 805 (11th Cir.1995); *Corbin v. Southland Int'l Trucks*, 25 F.3d 1545, 1548 (11th Cir.1994); *Howard v. BP Oil Co., Inc.*, 32 F.3d 520 (11th Cir. 1994); *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir.1994); *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 771–72 (11th Cir.1982). Accordingly, the court will consider Plaintiff's claims in concert.

■ The theory of "disparate treatment" has been stated by the Supreme Court of the United States as follows:

[Disparate treatment is] the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. [citation omitted]. Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII.

*International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Thus, the essence of disparate treatment is different treatment: in this case, it involves proof that Plaintiff, as a white, or male, or older employee, was treated differently than black or female or younger employees. In an action alleging disparate treatment under the statutes cited above, a plaintiff must prove an intentional discriminatory motive by presenting either direct or circumstantial evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 771–72 (11th Cir.1982). The court finds that, even viewing the record in a light most favorable to Plaintiff, he has failed to establish the necessary elements of a discrimination claim with either direct or circumstantial evidence.

A. *Plaintiff fails to establish a Prima Facie Case of Discrimination through Circumstantial Evidence.*

Plaintiff may establish intentional discrimination on the basis of race, gender or age

---

1. 42 U.S.C.A. § 2000e–2(a)(1) (West 1981) provides:

 It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.

2. 42 U.S.C. § 1981 provides in relevant part: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens."

3. 29 U.S.C. § 623(a)(1) provides:

 It shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age.

 In order to fall under the ADEA's protections, an employee must be "at least 40 years of age." *Id.* at § 631(a).

under the three-part burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also St. Mary's,* 509 U.S. at 518.

■■■ Under the *McDonnell Douglas* and *Burdine* framework, the plaintiff must first raise an inference of discrimination by establishing a prima facie case. *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994) (citation omitted). The purpose of the prima facie case is to show an adverse employment decision that resulted from a discriminatory motive. *See Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1143 (11th Cir.1983).

■■■ If a plaintiff succeeds in showing a prima facie case of discrimination, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment decision. *McDonnell Douglas,* 411 U.S. at 802. The Eleventh Circuit has determined that this intermediate burden is "exceedingly light." *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1019 (11th Cir.1994) (quoting *Perryman v. Johnson Prods. Co .,* 698 F.2d 1138, 1142 (11th Cir.1983)). Thus, to overcome the presumption of discrimination demonstrated by the plaintiff-employee, the defendant-employer "need only offer admissible evidence sufficient to raise a genuine issue of material fact as to whether it had a legitimate reason" for the employment decision contested by the plaintiff. *Turnes v. AmSouth Bank, NA,* 36 F.3d 1057, 1061 (11th Cir.1994)(citing *Hill v. Seaboard Coast Line R.R. Co.,* 767 F.2d 771, 774 (11th Cir.1985)). Should the defendant fail to meet its burden of production once the plaintiff demonstrates prima facie discrimination, "the unrebutted presumption of discrimination stands." *Turnes,* 36 F.3d at 1061 (citing *Joshi v. Florida State University Health Ctr.,* 763 F.2d 1227, 1236 (11th Cir. 1985)).

■■■ Once the defendant satisfies its burden of production, the inquiry becomes whether the plaintiff can show that the defendant's proffered reason was a pretext for discrimination. "Disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged actions." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1529 (11th Cir.1997)(citing *St. Mary's,* 509 U.S. at 511). To survive summary judgment at this point, the plaintiff must come forward with evidence sufficient "to permit a reasonable fact finder to conclude that the employer's proffered non-discriminatory reasons were not what actually motivated its conduct." *Id.* at 1528.

■■■ To establish a prima facie case under the framework described above, Plaintiff must present circumstantial evidence sufficient to create an inference that an employment-related decision was motivated by Plaintiff's age, gender or race. *See McDonnell Douglas,* 411 U.S. at 802. To establish a prima facie case, a plaintiff must allege: (1) he was a member of a protected group, (2) an adverse employment action took place, (3) he and a similarly situated non-protected person received dissimilar treatment, and (4) sufficient evidence, either circumstantial or direct, exists to infer a nexus or causal connection between race and the disparate treatment. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■■■ Here, Bell alleges that Defendant discriminated against him by transferring him from teaching an Eighth grade class to teaching a Seventh grade class. The only alleged "adversity" the court can glean from the record is the fact that the transfer required Bell to leave a subject he loved teaching. (Tr. at 65.) Further, Bell opposed the transfer because he claims that he was required to go through new books, create new lesson plans and engage in new preparation. (Tr. at 82.) Bell suffered no change in salary, benefits, tenure or status. (Tr. at 43.) The court finds that, even viewing the record

in a light most favorable to Bell, he has suffered no adverse employment decision as a result of his transfer. Facing new challenges such as learning new course material and preparing for new classes is an inherent aspect of the teaching profession. Thus, the court finds that Plaintiff has failed to establish a prima facie case of discrimination on the basis of gender, race or age.

In addition and in the alternative, even if Bell did establish a prima facie claim of discrimination, the court finds that Defendant has offered an overwhelmingly legitimate nondiscriminatory reason for transferring Bell from the Eighth to the Seventh grade teaching team. As Dr. Lockwood, the Superintendent of the Eufaula City Board of Education, stated, and the record supports, Bell was transferred "to reorganize the middle school teams and thereby provide a stronger educational program for the students at the Admiral Moorer Middle School." (Lockwood Aff. at 2.) Vic Adkinson, principal of the Admiral Moorer Middle School, provides numerous reasons—all of them legitimate and nondiscriminatory—for the transfer, as well. In particular, Adkinson states that the transfer was necessary for purposes of best utilizing Bell's superior knowledge and experience. (Tr. at 39–41.)

Plaintiff has failed to offer any evidence to support his allegation that the stated reasons for the transfer were "tainted," which the court construes as an allegation of pretext. Rather, Plaintiff states that "[t]he reasons stated by defendant, [Bell's] knowledge of the curriculum, is totally unfounded. Mr. Bell had not taught the seventh grade, would have to prepare just to become acquainted with the areas taught." (Pl.'s Mem. in Supp. of Pl.'s Resp. to Def.'s Mot. for Summ. J. at 5.) The court finds this argument misses the mark and fails to adequately rebut Defendant's legitimate non-discriminatory reasons for needing Plaintiff's expertise and teaching experience in a Seventh grade, as opposed to an Eighth grade, classroom. (*See* Tr. at 30–40.) Hence, the court finds that, even if Bell in fact does establish a prima facie case of discrimination on the basis of age, race or gender, Defendant has met its burden of showing a legitimate nondiscriminatory reason for the transfer, which Bell has failed to rebut. *See Turnes v. AmSouth Bank, NA,* 36 F.3d 1057, 1061 (11th Cir.1994).

**B.** *Plaintiff fails to Establish his Claim by Direct Evidence of Discrimination.*

The *McDonnell Douglas/Burdine* framework is inapplicable if plaintiff relies on direct evidence of racial discrimination. *Wilson v. City of Aliceville,* 779 F.2d 631, 634 (11th Cir.1986). Where there is direct evidence of discrimination, the employer must prove that it would have made the same decision even if it had not considered an impermissible factor. *Caban–Wheeler v. Elsea,* 904 F.2d 1549, 1554 (11th Cir.1990). Direct evidence of discrimination may take the form of discriminatory statements by an employer demonstrating an unlawful bias against the plaintiff with respect to the employment decision at issue. *Id.* Direct evidence of discrimination must be related to actions or statements of an employer "reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Hill,* 841 F.2d at 1539.

Plaintiff would have the court construe Vic Adkinson's comments that Plaintiff was transferred to allow for male role models, to achieve diversity in the teaching teams and to balance veteran and tenured teachers with non-tenured and non-veteran teachers, as "direct evidence" of discrimination on the basis of age, race, and/or gender. Again, the court is hard pressed to find any adverse employment decision suffered by Bell as a result of Defendant's decision. However, even viewing these facts in a light most favorable to Plaintiff and accepting his argument that Adkinson's statements are direct evidence of discrimination, the court finds that Defendant has shown, by a preponderance of the evidence, that it would have made the same employment decision even absent the alleged unlawful bias. (Tr. at 30–40.)

Hence, summary judgment is due to be granted for Defendant on Bell's claims of race, gender and age discrimination under Title VII, ADEA and Section 1981.

## II. Plaintiff's State Law Claims

 Bell contends that Defendant's actions constitute intentional infliction of emotional distress, also called the tort of outrage. To establish the tort of outrage, the plaintiff must prove three elements: "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; and (3) the distress was severe." *Moore v. Spiller Associated Furniture, Inc.,* 598 So.2d 835 (Ala.1992)(quoting *Perkins v. Dean,* 570 So.2d 1217, 1219 (Ala.1990)).

The Supreme Court of Alabama has summarized the exceedingly narrow scope of the tort as follows:

> [T]he tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, this court has held in a large majority of the outrage cases reviewed that no jury question was presented ... In fact, in the 12 years since *Inmon* was decided, all cases in which this court has found a jury question on an outrage claim have fallen within only three categories: 1) cases having to do with wrongful conduct in the context of family burials ... 2) a case where insurance agents employed heavy handed, barbaric means in attempting to coerce the insured into settling an insurance claim ... 3) a case involving egregious sexual harassment.

*Thomas v. BSE Industrial Contractors, Inc.,* 624 So.2d 1041, 1044 (Ala.1993).

 In its Motion for Summary Judgment, Defendant states that Bell has failed to substantiate his tort claim. The court agrees; Plaintiff has offered no evidence that Defendant's actions were sufficiently egregious to amount to the tort of outrage. Rather, Plaintiff merely avers that "[t]here

exists a dispute of material fact as to whether or not the facts as explained above would amount to such egregious acts of racial, gender, or age discrimination as to meet the burden for the tort of outrage." In a motion for summary judgment, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324; *see also* Fed.R.Civ.P. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp.,* 475 U.S. at 586. The court finds that Plaintiff has failed to meet his burden here. Requiring Bell to transfer from the Eighth to the Seventh grade teaching team, thereby requiring him to engage in additional preparation and perhaps learn new material, *even if* done for reasons motivated by the Plaintiff's race, gender or age, does not amount to "egregious" conduct as defined by the Alabama Supreme Court. Hence, the court finds that summary judgment is due to be granted for Defendant on Bell's tort claims, as well.

### ORDER

Based on the foregoing, it is hereby CONSIDERED and ORDERED that Defendant's Motion for Summary Judgment be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that all costs herein incurred be and the same are hereby taxed against the Plaintiff for which let execution issue.