Wayne GULLATTE, Plaintiff,

v.

WESTPOINT STEVENS,
INC., Defendant.

No. Civ.A. 99–A–1159–E.

United States District Court,
M.D. Alabama,
Eastern Division.

June 26, 2000.

Gregory D. Wiggins, Kyle T. Smith, Birmingham, AL, for plaintiff.

Leslie M. Allen, David R. Boyd, Montgomery, AL, for defendant.

### MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

## I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by the Defendant, WestPoint Stevens, Inc. on April 17, 2000, and on a Motion for Extension of Time to file a Reply to the Plaintiff's Opposition filed on June 19, 2000.[1]

The Plaintiff originally filed his Complaint in this case on September 29, 1999. The Plaintiff claims that he was subjected to unequal treatment because of his race, and that he was subjected to a hostile work environment.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

1. The Motion for Extension of time is due to be GRANTED.

## III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

The Plaintiff, Gullatte, is an African-American male who worked for WestPoint Stevens, Inc. from 1989 until September 1997. Gullatte was terminated from his employment in September of 1997. He has brought claims of discrimination on the basis of race against his former employer.

Gullatte states that in or around 1994, he was working on the first shift and was being supervised by Harold Bryant, when, on one occasion, he stopped the machine he was working on to take a break and Bryant said, "Niggers don't need no breaks." *See* Gullatte Declaration ¶ 2.

Gullatte further states that he took a leave of absence in August 1995 to have teeth extracted, and that when he sought to have his leave extended, the head of his department, Ben Denham ("Denham") said, "If you don't return to work, I'll fire your ass nigger." *Id.* at ¶ 4.

Gullatte concedes that according to company policy, if an employee receives three written warnings within a twelve month period, the employee will be terminated, subject to review by management. Gullatte states that he received a written warning for tardiness in August 1997, which was his second written warning in a twelve month period. He was issued two miscellaneous notices in September of 1997, either of which could have been issued as a warning.

Gullatte states that after he worked his shift on September 28, 1997, Denham said, "If you are late again, nigger, I'll fire your ass." *Id.* at ¶ 7. Gullatte states that on September 29, he called his then-supervisor Tracey Evans ("Evans") and told him

that he would be late to work. Gullatte states that there was a company policy that an employee should call an hour prior to the shift, if possible, if the employee was going to be late. *Id.* at ¶ 5. When Gullatte called before his shift, Evans told Gullatte to come to work as soon as he could get there. *Id.* at ¶ 8. When Gullatte arrived at work, he was told by the gate watchman to go home and report back the next day to Denham. *Id.* On September 30, 1997, Denham told Gullatte that his employment had been terminated. *Id.*

## IV. DISCUSSION

Gullatte has brought claims for discrimination on the basis of his race under 42 U.S.C. § 1981. WestPoint Stevens has moved for summary judgment on several claims which it perceives to have been asserted by Gullatte. In his brief in response to the Motion for Summary Judgment, Gullatte only contends that there is evidence which creates a question of material fact as to whether he was terminated on the basis of his race and was subjected to a racially hostile environment. Plaintiff's Brief, pages 7, 14.[2] The court will, therefore, examine the submissions of the parties to determine whether a question of fact precluding summary judgment exists as to Gullatte's termination and hostile environment claims.

Analysis of claims under § 1981 is the same analysis applied to claims brought under Title VII of the Civil Rights Act of 1964. *See Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1060 (11th Cir.1994). A plaintiff may seek to prove that he was discriminated against in his employment by relying on direct, circumstantial, or statistical evidence of discrimination. *Holi-*

---

**2.** To the extent that Gullatte ever asserted other claims, he has since abandoned those claims and summary judgment is due to be GRANTED on those claims. *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995). In the alternative, to the extent that Gullatte intends to pursue other claims, because Gullatte has not met his burden in responding to WestPoint Stevens' properly supported motion on these claims, summary judgment is due to be GRANTED as to those putative claims. Fed.R.Civ.Proc. 56(e).

*field v. Reno,* 115 F.3d 1555, 1561–62 (11th Cir.1997).

Gullatte contends that there is direct evidence that he was terminated from his employment on the basis of race. In defining direct evidence of discrimination, the Eleventh Circuit has held that "[d]irect evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption. Therefore, remarks by non-decisionmakers or remarks unrelated to the decision making process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1330 (11th Cir.1998) (citations omitted). "[D]irect evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 641 (11th Cir. 1998). Under this standard, "[i]f an alleged statement at best merely suggests a discriminatory motive, then it is by definition only circumstantial evidence." *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1266 (11th Cir.1999).

The evidence to which Gullatte points is that Denham used a racial epithet when he told him that if Gullatte were late again, Denham would fire him. Gullatte argues that Denham's statement does not merely suggest a discriminatory motive, it directly proves it because when discussing Gullatte's termination, Denham used the racial slur, and then one day later, fired Gullatte.

WestPoint Stevens responds that if the statement pointed to by Gullatte is direct evidence of anything, it is direct evidence that Denham intended to fire Gullatte the next time that Gullatte was late, and that the evidence is only circumstantial evidence of intent to discriminate. WestPoint Stevens asserts that the alleged comment by Denham is open to different interpretations, including that Denham was committed to enforcement of the work rules, and may have also had an inappropriate racial attitude. WestPoint Stevens also states that Denham was not the decision maker with respect to the disciplinary actions taken against Gullatte, but that Tracey Evans was the decision maker. WestPoint Stevens finally says that Denham was not the decision maker because once the third warning was issued, the termination was automatic, and that Wayne Roughton ("Roughton"), Human Resource Manager, and Greg Tarver ("Tarver"), Plant Manager, reviewed the circumstances surrounding the third warning, and determined that Gullatte should be terminated in accordance with company policy.

[redacted] In *Merritt v. Dillard Paper Company,* 120 F.3d 1181 (11th Cir.1997), the Eleventh Circuit analyzed evidence to determine whether it constituted direct evidence of discrimination. The court took the paradigm example of direct evidence, "Fire Earley—he is too old," and substituted the statements at issue in that case in determining that the statements were direct evidence. *Id.* at 1190. Applying that analysis here, the statements at issue do not fit into this example of direct evidence. Denham is not alleged to have said "I will fire you n___." Instead, he is alleged to have said that he would fire Gullatte if he were late again. To conclude that Gullatte was actually fired on the basis of race rather than because he was late, because Denham also used a racial epithet, would to be to draw an inference as to Denham's motivation. Accordingly, the court concludes that this statement is not a statement of direct evidence of discrimination.

Simply because Gullatte has not presented direct evidence of discrimination does not, however, mean that summary judgment is due to be granted. A plaintiff may also establish a claim for violation of § 1981 by using circumstantial evidence of discriminatory intent. Where the plaintiff seeks to prove intentional discrimination on the basis of race by using circumstantial evidence of intent, the court applies the framework first set out by the United

States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. 1817. After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence," *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Products, Inc.*, —— U.S. ——, 120 S.Ct. 2097, —— L.Ed.2d —— (2000).

■ To establish a prima facie case, Gullatte must show that he (1) is a member of a group protected by § 1981; (2) was qualified for the position; (3) suffered an adverse effect on his employment; and (4) suffered from differential application of work or disciplinary rules. *Spivey v. Beverly Enterprises*, 196 F.3d 1309 (11th Cir. 1999).

WestPoint Stevens contends that Gullatte cannot establish the elements of a prima facie case because the majority of Gullatte's comparators are black, therefore, no inference of race discrimination can be created. WestPoint Stevens also says that Gullatte can point to no white individual with a similar employment history who received three warnings within a

twelve month period but was not terminated.

Gullatte has stated that he knows of "at least five white employees who were not disciplined despite not calling in before being absent or tardy." Gullatte Declaration at ¶ 9; *see also* Gullatte Deposition, pages 90–91. Gullatte argues, therefore, that he has demonstrated that he was treated differently from persons outside of the protected class.

■ The prima facie burden should not be applied in an inflexible manner. *See Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir.1999). Although WestPoint Stevens is correct in its statement that there is no evidence before the court to demonstrate that there were white employees who were not terminated even though they had three disciplinary warnings within a twelve month period, the court cannot find that this is a basis for finding that the prima facie case has not been met. The prima facie case requirement must apply to the whole termination process, not just the ultimate step of firing based on the presence of three disciplinary warnings in a twelve month period. The policy under which Gullatte was ostensibly fired apparently consisted of two steps: one, the determination that the employee would be issued a disciplinary warning, and two, termination upon the issuance of a third warning in a twelve month period. To apply the prima facie case requirements in the manner urged by WestPoint Stevens would mean that no claim could be brought even if an employer created a situation in which it terminated an African–American by giving him a sufficient number of disciplinary warnings so that he would be fired under the company policy, and avoided firing white employees simply by not giving white employees disciplinary warnings under similar circumstances.

The court concludes that Gullatte's testimony that there were white employees who were not disciplined for actions for which Gullatte was disciplined, and that

Gullatte's disciplinary warnings are what ultimately lead to his termination, is sufficient to establish a prima facie case.[3] Alternatively, the prima facie case has been met because, as will be discussed below, there is evidence that Denham was involved in the decision making process. *See Schoenfeld*, 168 F.3d at 1268 (finding that fourth element of the prima facie case was met because there was evidence that the employee who evidenced gender bias was involved in the decision making process).

WestPoint Stevens states that even assuming a prima facie case can be met, its legitimate non-discriminatory reason for Gullatte's termination is that his discharge was mandated by the company policy which provides that an employee who receives three final warnings in a twelve-month period must be terminated. WestPoint Stevens states that even if there is evidence of animus on the part of Denham, Tracey Evans was the supervisor who initiated the disciplinary action against Gullatte which resulted in his termination, Roughton and Tarver independently reviewed the disciplinary action, and that there is no evidence that they had any racial animus.

In response to this articulation of a legitimate, nondiscriminatory reason, Gullatte states that Denham's statements are evidence of racial animus. Gullatte argues that while Tracey Evans gave him the disciplinary notice, the motives of Denham, the department head, are relevant because he played a role in the challenged decision.

Gullatte also states that white employees were not similarly disciplined.

Accepting Gullatte's evidence as true, as the court must in ruling on a Motion for Summary Judgment, Denham displayed racial animus by using racial epithets on two occasions. The issue presented to this court, therefore, is whether Denham was involved in the employment action at issue, so as to make Denham's racial animus relevant to the employment action and to raise a question of fact to undermine the legitimate non-discriminatory reason articulated by WestPoint Stevens.

Gullatte has testified in his deposition that the second time in the twelve-month period that he was cited for being tardy, Tracey Evans first told him that he was fifteen minutes late, then Evans met with Denham and, according to Gullatte, "they come up with I was nine minutes late." Gullatte Deposition, page 108. According to Gullatte, he was not late at all that night. *Id.* In September of 1997, Denham used a racial epithet and told Gullatte that if he was tardy again, he would be fired. Gullatte Declaration, ¶ 7. The next day, Gullatte called in before his shift to say that he would be late. Id. at ¶ 8. Tracey Evans told him to come to work. *Id.* When Gullatte arrived, he was told by the gate watchman to go home to come back the next day and report to Denham. *Id.* When he returned the next day, Denham told Gullatte that he had been terminated. *Id.*

■ The evidence pointed to by Gullatte would allow for a reasonable inference to be drawn that Denham was involved in at

**3.** WestPoint Stevens has presented evidence that Gullatte was issued miscellaneous notices in September, rather than warnings. The court does not conclude that this undermines his prima facie case, however. WestPoint Stevens has pointed to the Affidavit of Roughton, the Human Resource Manager, in which he describes a progressive discipline system which includes formal counseling for the first offense, a verbal and written warning report on the second offense, and a verbal warning and written report for each subsequent offense. *See* Affidavit of Roughton. In a foot-note, WestPoint Stevens states that the supervisor has discretion in deciding whether to issue a miscellaneous notice or warning, but the court has been pointed to no company policy governing the issuance of miscellaneous notices. The apparently standardless process by which employees were given notices rather than warnings may have allowed for employees to be treated differently on the basis of race. Furthermore, Gullatte has testified that the white employees were not disciplined at all.

least one, if not two, of the disciplinary warnings issued to Gullatte. The evidence of Denham's involvement in the final warning would also allow a reasonable fact finder to conclude that Gullatte's termination was Denham's enforcement of his statement that Gullatte would be fired if he were late again. Therefore, the court concludes that evidence of Denham's animus is relevant and creates a question of fact as to the legitimate non-discriminatory reason articulated by WestPoint Stevens. The fact that the decision to terminate was reviewed by other officials does not cause the court to find that there is no evidence to undermine the legitimate non-discriminatory reason, given Denham's apparent involvement in the underlying disciplinary warnings which caused the company termination policy to be applied. *See Nida v. Echols,* 31 F.Supp.2d 1358 (N.D.Ga.1998) (stating that if a subordinate is able to influence a decision, the existence of bias of the subordinate becomes important).

Gullatte has also called the circumstances of his termination into question by testifying that white people were not disciplined, but that Gullatte was, and that it was the disciplinary warnings Gullatte received under this system of disparate application which caused the termination policy of the company to apply to him. WestPoint Stevens has argued that because there were African–American employees who were favorably treated, no inference of discrimination can be raised, both because they were favorably treated, and because an inference of non-discrimination should be raised by the fact that the employees were so treated by the same actor as Gullatte. Accepting Gullatte's evidence of disparate treatment and racial epithets as true, however, the court concludes that the ultimate question of

whether Gullatte was discriminated against on the basis of his race must be made by the finder of fact. *See Pearson v. Macon–Bibb County Hosp. Authority,* 952 F.2d 1274, 1280 (11th Cir.1992) ("summary judgment is not a proper vehicle for resolving claims of employment discrimination which ... turn on an employer's motivation and intent.").

WestPoint Stevens finally argues that, although it disputes that it was motivated by race, even if it were motivated by race, it would have fired Gullatte anyway based on the policy which mandates termination if there are three warnings. The court cannot find that this argument entitles WestPoint Stevens to summary judgment, however, because the reason for termination WestPoint Stevens has pointed to, the policy of termination after three written warnings in a twelve month period, is the same reason articulated by WestPoint Stevens as the legitimate non-discriminatory reason for Gullatte's termination, which is undermined by Gullatte's evidence of disparity in application of disciplinary notice policy and evidence of Denham's racial animus. Accordingly, the court finds that the Motion for Summary Judgment is due to be DENIED as to this claim.[4]

Gullatte also brings a claim for hostile environment on the basis of race. According to Gullatte, he was subjected to a hostile environment because on three different occasions he was called the racial epithet "nigger" by a supervisor. Plaintiff's Response to the Motion for Summary Judgment, page 15.

■ To establish a claim for hostile environment racial harassment an employee must show: (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome harassment;

---

4. The court notes that WestPoint Stevens has stated Gullatte has never mentioned any racial statements being made to him before he filed this lawsuit, and that he has previously sought and has been denied compensation from government agencies. These matters have not been considered by this court be-

cause this court may not consider evidence which goes to credibility in deciding a motion for summary judgment. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor).

(3) that the harassment was based on the race of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *See Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir.1999) (*en banc*) (setting forth elements of a sexual harassment claim).

■ The Eleventh Circuit has explained that the fourth element—that the conduct complained of was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment"—is the element that "tests the mettle of most ... harassment claims." *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 2000 WL 633024 (11th Cir. May 17, 2000). Requiring the plaintiff to prove that the harassment is severe or pervasive ensures that § 1981 does not become a mere "general civility code." *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Mendoza,* 195 F.3d at 1246.

Gullatte says that although the epithets he has identified occurred on only three occasions, based on the severity of the conduct, a hostile environment was created.

Under the standards applied in this circuit for evaluating whether there is sufficient evidence of severe and pervasive harassment, "mere utterance of an ... epithet which engenders offensive feelings in an employee does not sufficiently implicate Title VII." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972).[5]

In *Evans v. Pemco Aeroplex, Inc.,* 1998 WL 1048470, No. CIVACV96–S–2801–S (N.D.Ala. Feb. 23, 1998), there were five incidents of racist conduct, including the use of nooses and the letters "KKK," which were separated by a period of months or years. *Id.* at *14. The court acknowledged that such incidents could be physically threatening. *Id.* The court concluded, however, that without evidence that the incidents affected his work performance, the court could not conclude that the alleged harassment was sufficiently severe and pervasive to alter a term or condition of employment. *Id.*

Similarly, in *Smith v. Beverly Health and Rehabilitation Services,* 978 F.Supp. 1116, 1120 (N.D.Ga.1997), the court concluded that it was not sufficient to state a claim for hostile environment harassment that the plaintiff "merely highlight[ed] a couple of utterance of racial epithets as evidence of a hostile work environment."

■ In this case, there were three epithets in an eight year period, one in or around 1994, one in August of 1995, and one in September of 1997, by two different supervisors. While the nature of the epithets was severe, the significant span of time between these sporadic epithets militates against a finding that these three incidents during an eight year period were sufficiently pervasive to alter Gullatte's work environment. Accordingly, while the use of these slurs, if true, is certainly reprehensible and is not to be condoned in any respect, the court cannot conclude that Gullatte's evidence of the sporadic use of three slurs in an eight year period is suffi-

---

**5.** The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit decided as of October 1, 1981. *Bon-* *ner v. City of Prichard, Ala.,* 661 F.2d 1206 (11th Cir.1981) (*en banc*).

cient to establish that there was a hostile working environment. The Motion for Summary Judgment is, therefore, due to be GRANTED as to this claim.

## V. *CONCLUSION*

For reasons discussed, it is hereby OR-DERED as follows:

1. The Motion for Extension of Time (Doc. # 18) is GRANTED.

2. The Motion for Summary Judgment (Doc. # 8) is GRANTED in part and DE-NIED in part. The Motion for Summary Judgment is DENIED as to the termination claim and is GRANTED in all other respects.